UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STEVE BAUER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 1:18-CV-5 |
| | § | |
| AEP TEXAS Inc., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Defendants Wright Tree Service, Inc. ("WTS"), AEP Texas Inc. ("AEP Texas"), and American Electric Power Service Corporation ("AEPSC") have each moved for summary judgment (Docs. 13, 14, 15). Based on the parties' briefing related to the motions, the summary judgment evidence, the applicable law, and the record in this lawsuit, the Court finds the motions well taken as to the causes of action for breach of contract, breach of warranty, and violations of the Texas Deceptive Trade Practices Act. Plaintiffs Steve and Mary Ellen Bauer, however, have established that a genuine issue of material fact exists concerning their claims for negligence and gross negligence.[1]

## I.      Factual Summary

In January 2017, a fire engulfed a palm tree farm that the Bauers own in South Texas. At the time, WTS was cutting down palm trees on the property, under a contract with AEP Texas, and based on AEP Texas's transmission line easement.[2] This easement on the Bauers' property granted AEP Texas "the right to remove from said lands all trees and parts, thereof, or other obstructions which endanger or may interfere with the safety

---

[1] The Bauers bring suit both in their individual capacities and as co-trustees of the S.D. and M.E. Bauer Living Trust.

[2] WTS provided the services for vegetation management through a contract with AEPSC, as agent for Public Service Company of Oklahoma, AEP Texas North Company, and AEP Texas Central company. AEP Texas was one of the beneficiaries of that agreement. AEP Texas Motion (Doc. 13) at Exh. 1-A.

or efficiency of said line, or its appurtenances." AEP Texas Motion (Doc. 13) at Exh. 2. It is not disputed that AEP had the right to remove trees within their easement.

Before the work on the property began, AEP Texas provided the Bauers a "Tree Removal Agreement." AEP Texas Motion (Doc. 13) at Exh. 3. This document informed the Bauers that, in accordance with the easement, AEP Texas planned to contract tree removal professionals to cut palm and willow trees that threatened electrical service in the area, and that were on the Bauers' property.

The Bauers allege that during the work, a WTS worker placed a hot chainsaw on the ground, starting the fire that consumed or damaged all of the palm trees on the farm. American Electric Power Service Corporation and AEP Texas Inc.'s Notice of Removal (Doc. 1) at Exh. 3 (Plaintiffs' Original Petition). Following the blaze, in December 2017, the Bauers filed this lawsuit in a Texas state court. They assert causes of action against all three defendants for Breach of Contract, Breach of Warranty, Negligence, Gross Negligence, and violations of the Texas Deceptive Trade Practices Act ("DTPA").

In January 2018, Defendants removed the action to federal court based on diversity jurisdiction. Notice of Removal (Doc. 1). All three Defendants have now moved for summary judgment. Each defendant seeks judgment as a matter of law as to the Bauers' claims for breach of contract, breach of warranty, and under the DTPA. AEPSC and AEP Texas also move for summary judgment as to the Bauers' negligence and gross negligence claims.[3]

---

[3] The Bauers note that neither AEP Texas Inc. nor AEPSC moved for summary judgment as to the cause of action for negligent hiring. *See* Plaintiffs' Response to AEP Texas Motion (Doc. 18) at fn. 74; Plaintiffs' Response to AEPSC Motion (Doc. 19) at fn. 77. The Original Petition provides only a brief reference to negligent hiring, within the section concerning negligence. *See* Notice of Removal (Doc. 1) at Exh. 3, pp. 3-4 (Plaintiffs' Original Petition). AEP Texas and AEPSC do not address these specific allegations in their

## II.     Standard of Review

Summary judgment is proper if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). A genuine dispute over material facts exists if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Mere allegations of a factual dispute between the parties will not defeat a motion for summary judgment; however, it must be proven by the moving party that there is no genuine issue of material fact. *Id.* The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

A fact is considered material if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 242. A dispute concerning a material fact is genuine if there is evidence allowing a reasonable jury to return a verdict for the non-moving party. *Id.* If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Id.* at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Id.* at 257. The burden then shifts to the resisting party to present affirmative evidence to defeat the motion.

---

summary judgment briefing. As the Court denies the motion for summary judgment as to negligence, all properly pled bases for the negligence claim survive.

*Id.*  All facts and inferences drawn from those facts must be viewed in the light most favorable to the party resisting summary dismissal.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

III.   **Analysis**

After applying the relevant law to the summary judgment evidence, this Court concludes that the motions for summary judgment should be granted as to the causes of action for breach of contract, breach of warranty, and violations of the DTPA.  However, because the Bauers have established that a genuine issue of material fact exists concerning the causes of action for negligence and gross negligence, those claims survive as to all parties.

A.     **Breach of Contract**

Each defendant denies that it entered into a contract with the Bauers.  To prove that an enforceable contract exists, a plaintiff must show (1) that an offer was made, (2) that it was accepted, (3) that there was mutual assent, (4) execution and delivery of the contract with the intent it be mutual and binding, and (5) consideration supporting the contract.  *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).  In their Original Petition, the Bauers identify the alleged contract as a document entitled "Tree Removal Agreement," which AEP Texas provided to them before the work began, and which the Bauers signed.  *See* Notice of Removal (Doc. 1) at Exh. 3, pp. 5-6. (Plaintiffs Original Petition).  For the reasons indicated below, however, this document cannot constitute an enforceable contract between the Bauers and any of the Defendants.

In addition to the Tree Removal Agreement, in their Response to the AEP Texas Motion, the Bauers for the first time identify the original easement as a contract also supporting their breach of contract claim.  *See* Response to AEP Texas Motion (Doc. 18)

at ¶ 66; Response to AEPSC Motion (Doc. 19) at ¶ 67. "[A] claim which is not raised in the complaint, but is mentioned only in response to a motion for summary judgment is not properly before the court." *Cutera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This is so because "a properly pleaded complaint must give fair notice of what the claim is and the grounds upon which it is based." *Id.* Before their Response, the Bauers had not relied on the original easement in connection with their claims. In addition, in their cursory reliance on this document in their Responses, the Bauers note only that the document required AEP Texas to "maintain and safeguard" the power lines on the Bauers' property. The Bauers do not allege that AEP Texas failed to maintain and safeguard the power lines. In light of the untimely identification of this alleged contract, and the futility of relying on this document, this Court disregards the original easement as a basis for the Bauers' breach of contract claim. *See, e.g., DeFrancheschi v. BAC Home Loans Service, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) (affirming summary dismissal of breach of contract claim based on theories not alleged in the complaint); *Cutera*, 429 F.3d at 113 (affirming summary judgment as to claims raised for the first time in response to a motion for summary judgment).

### 1. The "Tree Removal Agreement"

The document that AEP Texas provided to the Bauers does bear some indications of being a contract, beginning with the obvious – i.e., the bolded and all-capitalized title, "TREE REMOVAL AGREEMENT". AEP Texas Motion (Doc. 13) at Exh. 3. The document, after describing the trees to be removed, also requests the property owner to sign and confirm that "I, the undersigned, own the property described above *and agree to* the removal of the described tree(s)." *Id.* (emphasis added). No party disputes that

AEP Texas provided the document to the Bauers, and that Mr. Bauer complied with the request to sign the document before WTS began the tree removal services.

This document, however, despite its terminology, cannot represent a contract between the Bauers and any of the Defendants. The summary judgment evidence establishes that AEP Texas, by providing the Tree Removal Agreement to the Bauers, was not making an offer for the Bauers to consider, but was merely notifying the Bauers of a right that AEP Texas already possessed. The parties acknowledge that AEP Texas held a valid easement to remove trees from the Bauers property. *See, e.g.*, AEP Texas Motion (Doc. 13) at ¶ 3; Plaintiffs' Response to AEP Texas Motion (Doc. 18) at ¶ 11. While AEP Texas used language in the Tree Removal Agreement requesting that the Bauers "agree" to the removal, the Bauers did not have to agree for AEP Texas to proceed with the removal. In other words, the Bauers could not "reject" the planned tree removal or deny AEP Texas access to the property. *See, e.g.*, *DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96 (Tex. 1999)(finding an easement that gave, among other things, the right to "clear the right-of-way of all obstructions," and "to cut and trim trees within the right-of-way . . .", granted a right to enter and remove trees within the easement); *Lindemann Prop., Ltd. v. Campbell*, 524 S.W.3d 873, 880 (Tex. App.—Fort Worth 2017, pet. denied) (holding an easement that granted the holder the right to "maintain" a tower gave the right to enter land and remove and replace the tower).

Consistent with the absence of a true offer, the "Tree Removal Agreement" also confirms on its face that the parties never contemplated that the Bauers would provide consideration. The document notes that the tree removal would "be done by professionals, contracted by AEP/Texas, at *no charge to you***."** AEP Texas Motion (Doc. 13) at Exh. 3 (emphasis added). The absence of consideration negates contract

formation, and also reinforces the finding that AEP Texas was not making an offer via the Tree Removal Agreement. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) (noting that consideration is a bargained for exchange of promises and consists of benefits and detriments to each contracting party, and is required for contract formation); *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287 (Tex. App.—Corpus Christi 2003, pet. denied) (stating consideration is a fundamental element of a valid contract).

The Bauers present three arguments that they provided consideration. First, they argue that the destruction of the palm trees satisfies this element. But property damaged by an individual's wrongful conduct under an alleged contract cannot represent the consideration that created the contract. To support a breach of contract claim, the agreement must pre-exist the alleged damages; the harm itself cannot represent the consideration. Second, the Bauers contend that they gave consideration by allowing the removal of any trees – i.e., even if the removal were conducted properly – because every tree on their farm held value to them. This argument also fails, however, because AEP Texas already possessed the right to remove the trees under the existing easement. Discharge of legal duties that already exist, as a result of previous contracts based on consideration previously paid, does not act as new consideration supporting a new contract. *See Martens v. Prairie Producing Co.*, 668 S.W.2d 889 (Tex. App.—Houston [14th Dist.] 1984, no writ) (holding that discharge of an already existing legal duty does not constitute consideration); *Okemah Constr., Inc. v. Barkley-Farmer, Inc.*, 583 S.W.2d 458 (Tex. App.—Houston [1st Dist.] 1979, no writ) (holding that defendant's agreement to continue to perform service agreed to in a previous contract was not adequate consideration for the creation of a new contract). Finally, the

Bauers propose that they provided consideration by authorizing AEP Texas to exceed the scope of their easement. This theory consists of the argument that the easement authorized AEP Texas to "remove" trees, but not to cut them down. In essence, the Bauers construe the term, "remove", in the original easement, as requiring that AEP Texas move the trees in a manner that maintained their value to the Bauers, presumably by allowing their re-planting. The Bauers raise this theory for the first time in response to the summary judgment motion. In any event, the proposed construction is inconsistent with the easement's language. AEP Texas holds the right to "remove *from said lands* all trees and parts . . . ." AEP Texas Motion (Doc. 13) at Exh. 2 (emphasis added). The generally understood meaning of this unambiguous language authorizes AEP Texas to remove the trees entirely from the property, precluding a construction that required doing so in a manner that allowed for their re-planting on another portion of the property. Even if the language were ambiguous, the Bauers reference no evidence indicating that the parties who entered into the easement understood "remove" to hold the meaning that the Bauers advance. In the end, the Bauers fail to provide any summary judgment evidence demonstrating that they provided consideration for the alleged contract.

### 2. Third-Party Beneficiary Status

The Bauers alternatively argue that even if they did not enter into a contract with any of the Defendants, they should be considered third-party beneficiaries of the contract that AEPSC signed with WTS for tree removal services. In advancing this argument, the Bauers rely on Texas law establishing that third-party beneficiaries of a contract can sue for breach of contract if (1) the contracting parties intend to secure a benefit for the third party, and (2) the contracting parties entered the contract directly

for the third party's benefit. *See First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017); *South Tex. Water Auth. V. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (per curiam) ("A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit."); *MCI Telecomms. Corp. v. Texas Utils. Elec. Corp.*, 995 S.W.2d 647, 651 (Tex. 1999) (stating "a third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit."). But it is not enough that the third party could benefit: The contracting parties must *intend* to benefit the third party. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011); *Lomas*, 223 S.W.3d at 306. Moreover, "[t]o create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a 'claimant' in the event of breach." *First Bank*, 519 S.W.3d at 102 (citing *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 505 (Tex. 1975)).

The summary judgment evidence establishes that AEPSC did not contract with WTS to secure a benefit for the Bauers and, as a result, the Bauers cannot be considered third party beneficiaries of the agreement between AEPSC and WTS. On the contrary, the summary judgment record supports only the conclusion that AEPSC contracted with WTS for the benefit of other companies, such as AEP Texas, within the broader corporate organization. The AEPSC-WTS agreement dates back to 2012, several years before the January 2017 fire that consumed the Bauers' palm trees. *See* Plaintiffs' Response to AEP Texas Motion (Doc. 18) at Exh. 10. No evidence suggests that AEPSC entered into the agreement with WTS to benefit the Bauers, or even contemplated work

specifically on the Bauers' property at the time the contract was being negotiated or was signed. Rather, AEPSC contracted WTS to provide as-needed vegetation management services for various entities, including AEP Texas, to enable these companies to keep power lines functioning adequately.

The Bauers also ask the Court to find that AEPSC contracted WTS to benefit *all* property holders on which AEP Texas holds an easement, and on whose property WTS would provide vegetation management services. *See* Plaintiffs' Response to AEP Texas Motion (Doc. 18) at ¶ 70. But the Bauers cite to no precedent supporting such a broad proposition. While AEP Texas's exercise of rights under its easements may at times benefit a specific land owner by removing unwanted vegetation, this circumstantial effect does not establish contractual obligations between the property owner and the service provider with whom AEP Texas and/or AEPSC contracts. Likewise, while keeping vegetation from interfering with power lines generally benefits society by ensuring consistently-available electricity, this reality does not transform every property owner into a third-party beneficiary with contractual rights against the service providers that companies such as AEPSC hire.

### B.    Breach of Warranty Claim

Each Defendant also seeks summary judgment as to the Bauers' claim for breach of warranty. The Defendants rely on the absence of an agreement to challenge the validity of the cause of action. Under Texas law, a breach of warranty claim requires establishing six elements: (1) the defendant sold services to the plaintiff; (2) the defendant made representations to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff

notified the defendant of the breach; and (6) the plaintiff suffered injury. *Paragon Gen. Contractors, Inc. v. Larco Const. Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.). The plaintiff must demonstrate that a sale or contract arose between the seller and the buyer – that is, for a warranty to exist, there needs to be "a sale or contract . . . and the seller, to induce the sale, undertakes to vouch for the condition, quality, quantity, or title to the thing sold." *Church v. Orthopedic Diagnostic Sys., Inc.*, 694 S.W.2d 552, 555 (Tex. App.— Corpus Christi 1985, writ ref'd n.r.e.).

Each Defendant argues that it sold no services to the Bauers, precluding the existence of any warranty with regard to the tree removal work. In response, the Bauers highlight the same documents that support their breach of contract claim – i.e., the easement and the Tree Removal Agreement. *See* Plaintiffs' Response to AEP Texas Motion (Doc. 18) at p. 26–27; Plaintiffs' Response to WTS Motion (Doc. 20) at pp. 22-24. However, based on the same analysis applicable to the breach of contract claim, neither of these documents represents an enforceable agreement between the Bauers and another party. No party offered to sell the Bauers any services, and absent a sale, no warranty could have arisen.

In their response to WTS's Motion for Summary Judgment, the Bauers also contend they benefit from the warranties that WTS provided to AEP Texas in their contract. But again, the summary judgment record does not support a finding that the Bauers are third party beneficiaries of the agreement between AEPSC and WTS and, as a result, any warranties in that agreement cannot benefit the Bauers.

### C.      Violations of the Texas Deceptive Trade Practices Act

The DTPA provides relief only when (1) the plaintiff is a consumer, (2) the defendant is amenable to suit under the DTPA, (3) the defendant violated a specific

provision of the statute, and (4) the defendant's conduct was a producing cause of the plaintiff's damages. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). A consumer under the DTPA is an individual who has sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of the complaint. *See id.* at 650. A plaintiff's standing as a consumer "is established by his relationship to the transaction, not by a contractual relationship with the defendant." *Lukasik v. San Antonio Blue-Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.). Courts have denied consumer status under the DTPA to plaintiffs who did not actually purchase a good or service. *See e.g., Lukasik*, 21 S.W.3d at 401 (holding that plaintiffs lacked consumer status when they did not independently act to purchase a pool alarm from the defendants). The question of consumer status under the DTPA is a question of law for the court to decide, unless a fact issue exists regarding the issue. *Lukasik*, 21 S.W.3d at 401.

In the present case, the Defendants have demonstrated that as a matter of law, the Bauers are not consumers as defined by the DTPA. The Bauers did not independently act to purchase the tree removal services from any of the Defendants. While AEP Texas notified the Bauers of the upcoming tree removal, the parties did not negotiate or otherwise engage in a commercial transaction for the services. At most, the Bauers signed the Tree Removal Agreement to confirm they owned the property and were aware of the upcoming tree removal. As to WTS, the Bauers concede they had no communication with WTS until after the fire, confirming that no negotiations occurred between these parties regarding the tree removal services. *See* WTS Motion (Doc. 15) at 13. In addition, the work was completed "at no charge" to the Bauers. *See* AEP Texas Motion (Doc. 13) at Exh. 3 (Tree Removal Agreement).

The Bauers alternatively claim consumer status as third party beneficiaries of the tree removal, but this argument does not enable them to survive summary judgment. In limited situations "a third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party." *Lukasik* 21 S.W.3d at 401; *see also Kennedy v. Sale*, 689 S.W.2d 890, 892–93 (Tex. 1985) (plaintiff does not need to be a direct purchaser to qualify for consumer status under the DTPA). The purchase must have occurred to benefit, at least in part, the third party asserting consumer status. *See Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1426–27 (5th Cir. 1992). In *Wellborn*, the Fifth Circuit held that consumer status extended to a minor killed by a garage door that his mother purchased. *Id.* Though the minor was not a party to the contract, and although his mother did not purchase the garage door specifically for him, his benefit from having a garage door represented at least one of the reasons for the purchase, and he did use the device. *Id.* Under these circumstances, the court concluded that the minor held consumer status under the DTPA. *Id.*

The present case does not involve an analogous scenario that grants consumer status to a third party benefiting from a transaction. AEP Texas purchased tree removal services from WTS, and did so to benefit AEP Texas and not the Bauers. To the extent that the palm trees held value for the Bauers, the tree removal actually represented a detriment to the Bauers' financial interests. While AEP Texas's maintenance of access to the transmission lines provided general benefit to electricity customers, such attenuated benefit does not approach the close nexus that parties have held to the subject matter of the contract in cases finding that third party beneficiary status existed.

Overall, the summary judgment evidence establishes that the Bauers did not

request tree removal services, took no part in selecting WTS for these services, and had no obligations with respect to the tree removal. Under these circumstances, the Bauers cannot satisfy the definition of consumer under the DTPA.[4]

### D. Negligence Claim[5]

To prove negligence, the Bauers need to establish that AEP Texas and AEPSC (1) owed a duty, (2) that the duty was breached, (3) and that the breach was the actual and proximate cause of (4) damages. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *First Assembly of God, Inc. v. Texas Util. Elec. Co.*, 52 S.W.3d 482, 491 (Tex. App.—Dallas 2001, no pet.). For purposes of the summary judgment analysis, AEP Texas and AEPSC argue that they owed no duty of care to the Bauers for the conduct of WTS. They posit that WTS worked as an independent contractor and that, as a result, its conduct cannot be imputed to either AEP Texas or AEPSC.

Generally, an organization has no duty to ensure that an independent contractor performs its work in a safe manner. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). Independent contractors have the "sole control over the means and methods of the work to be accomplished, [and] the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person." *Chavez v. Hilton Mgmt., L.L.C.*, No. H–12–cv–281 , 2013 WL 2452672 at *3 (S.D. Tex. 2013).

But as the Supreme Court of Texas has recently reaffirmed, "disputes often arise

---

[4] The Bauers contend they lacked sufficient time to conduct discovery and properly respond to the summary judgment motions. However, the topics the Bauers list as matters on which they require additional discovery predominantly concern the negligence and gross negligence claims. Whether the Bauers had additional time for discovery would not affect the Court's analysis as to the causes of action for breach of contract, breach of warranty, and violations of the DTPA.

[5] WTS has not moved for summary judgment as to the Bauers' negligence and gross negligence claims.

over whether the worker was an independent contractor rather than an employee," noting that "the distinction is significant because, as a general rule, an employer is insulated from liability for the tortious acts of its independent contractors." *Painter v. Amerimex Drilling I, Ltd.*, No. 16–0120, 2018 WL 2749862 at *3 (Tex. 2018) (motion for rehearing filed, currently pending). The "supreme test" is a question of control: "whether the person sought to be liable – though not at fault himself – can be said to have such a degree of express or implied control over the actor to justify imposing on him the consequences of the actor's wrongful conduct." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002).

As an initial step in the analysis, the existence of a contract expressly providing that the contracted organization is an independent contractor is often, but not always determinative. *See e.g., Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911 (Tex. App.—Fort Worth 2009, pet. denied). This general rule gives way, however, if the company entrusting work to an independent contractor exercises significant actual control over the work. "Whether the terms of a contract give the employer a retained right of control over work is a question of law, as is the construction of any contract; but the question of whether the employer actually exercised control over work is typically one for the fact finder." *McClure v. Greater San Antonio Transp. Co.*, Civil No. SA-08-CA-112-FB, 2209 WL 10670178, at *6 (W.D. Tex. March 24, 2009).

For the duty to arise, the general contractor "must have the right to control the means, methods, or details of the independent contractor's work." *Elliott-Williams Co.*, 9 S.W.3d at 804; *see also Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). Courts consider the following factors to assess the level of the contractor's control over the worker's conduct: (1) the independent nature of the

worker's business; (2) the worker's right to control the progress of the work except about final results; (3) the time for which the worker is employed; and (4) the method of payment, whether by unit or time or by the job. *Limestone Prods. Distrib., Inc.*, 71 S.W.3d at 312. No factor is determinative, and not all factors need to support the same conclusion. *See Employers Mut. Cas. Co. v. Bonilla*, No. 3:07–CV–0648–G, 2011 WL 3628950, at *4 (N.D. Tex., Aug. 16, 2011) (citing *Wilson v. Mitul Patel*, No. 03-03-00275-CV, 2004 WL 579073, at *1 (Tex. App.—Austin 2004, no pet.)).

The contractor's role must be more than a general right to order the work to start or stop, or to inspect progress or receive reports on the status of the work. *See Dow Chem. Co. v. Bright* 89 S.W.3d 602, 606 (Tex. 2002). An employer may give direction as to the specifications of a job, details such as the position of a structure, or the character of the materials and workmanship, and still maintain an independent contractor relationship. *Mid-Continent Cas. Co. v. Andregg Contracting, Inc.*, 391 S.W.3d 573, 575 (Tex. App.—Dallas 2012, pet. denied). Liability arises "only if the employer controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 792 (Tex. 2006).

Not surprisingly, when the hiring company exercises minimal control over the worker's conduct, courts have found the worker to be an independent contractor whose conduct cannot be imputed to the contracting company. *See, e.g., id.* (holding that a night club could not be vicariously liable for the conduct of a security guard hired as an independent contractor, when no evidence existed that the night club "gave more than general directions" to the security guard company or "that it retained the right to control the manner" in which the security guard company performed its duties); *Limestone*

*Prods. Distrib., Inc.*, 71 S.W.3d at 308 (holding that the summary judgment evidence conclusively established that a company an individual hired to pick up and deliver loads of limestone was an independent contractor, because the hiring company only told the deliverer "where to pick up and drop off loads," and had him "turn in his load tickets to get paid;" as to all other facets of the work, the hiring company provided "broad discretion").

Other cases, however, involve more complex factual scenarios, in which the individual *Limestone* factors point in different directions. *See e.g., Mid-Continent Cas. Co.*, 391 S.W.3d at 573; *McClure v. Greater San Antonio Transp. Co.*, Civil No. SA-08-CA-112-FB, 2209 WL 10670178, at * 6 (W.D. Tex. March 24, 2009). In *Mid-Continent,* the court considered whether an individual who suffered injuries while removing trees was an employee or an independent contractor for the hiring company. In affirming the trial court's finding, after a trial on the issue, that the individual was an independent contractor, the appellate court noted that the worker was "free to cut the tree as he pleased" and primarily used his own equipment. But the court also highlighted, *inter alia*, that the hiring company used only independent contractors for all work, provided IRS form 1099s to the workers, paid them as they completed their work and did not withhold taxes, and hired on an as-needed basis.

In *McClure*, defendant GSTC owned taxi cabs and enjoyed a contract with the city to provide public transportation. Defendant Hamed drove a taxi cab under a written agreement with GSTC that characterized him as an independent contractor. Defendant Hamed was providing taxi services to an individual when an accident occurred in which the passenger suffered serious injuries. The passenger sued GSTC for negligence, among other claims, arguing that GSTC's control over Hamed's taxi services rendered

GSTC liable for Hamed's conduct as a taxi driver. GSTC moved for summary judgment, relying in large measure on the independent contractor agreement. The district court applied the *Limestone* factors and concluded that a fact issue existed "as to whether, contrary to the intent of the agreement, GSTC actually exercised control over Mr. Hamed's work at the time of the accident." The court's extensive analysis of the summary judgment evidence reflects the significant element of control that GSTC exercised over Hamed.

### 1. AEP Texas

AEP Texas submits summary judgment evidence claiming WTS worked as an independent contractor. To begin, AEP Texas highlights that the contract with WTS expressly characterizes WTS as an "independent contractor". AEP Texas Motion (Doc. 13) at ¶ 11. In addition, AEP Texas contends it did not control the "means, methods, or details of Wright's work." *Id.* at ¶ 12.

In response, the Bauers concede that the contract between AEPSC and WTS utilizes the "independent contractor" denotation, but argue that the summary judgment evidence, when applied to the *Limestone* factors, creates a fact issue as to whether AEP Texas's control over WTS's work renders AEP Texas liable for WTS's conduct. In particular, the Bauers argue that the written guidelines impose stringent requirements on AEP Texas's contractors, demonstrating that WTS's work was not truly independent, and that AEP Texas controlled not just the result of the work, but its progress. For example, the Bauers highlight that the written guidelines:

- Authorize AEP to give instructions to a WTS authorized representative, who must be present at the worksite;

- Require approval by AEP Forestry personnel for changes in the work schedule;

- Require that AEP approve the removal of "key personnel" from the worksite;

- Establish a minimum number of chainsaws for the job;

- Require that tree removal be completed in one operation;

- Provide guidelines regarding identifying trees for removal;

- Require that tree stumps be no taller than three inches and treated with approved herbicides;

- Authorize AEP Forestry to conduct audits of WTS's work to determine if WTS workers used personal protective equipment per OSHA and ANSI specifications; and

- Authorize AEP to require WTS employees to remain on the worksite overnight during instances of "Emergency Assistance, Work Flow Driven (LEAN), or Crew Cohesion".

*See, e.g.*, Plaintiffs' Response to AEP Texas Motion (Doc. 18) at Exh. 6 at p. 8, 10; Exh. 8(a) at 2; Exh. 9 at p. 2–3; Response to AEPSC Motion (Doc. 19) at Exh. 8(C) at Bates No. 216. The Bauers note that the contract with WTS extended back to 2012, evidencing a lengthy business relationship. Although the contract does not require that WTS perform services solely for AEP Texas, the contract does prohibit WTS employees from soliciting "private work" while on AEP Texas's time.

The method of payment supports a finding of an independent contractor. The contract appears to call for payment per job, and not by hour. The contract expressly requires WTS to pay all taxes applicable to the services provided.

Viewing this summary judgment evidence in the light most favorable to the Bauers, these factors create a fact issue as to whether AEP Texas exercised sufficient control over WTS to be held liable for WTS's conduct when removing the palm trees. While AEP Texas correctly notes that courts have found certain specific facts (e.g., requiring certain safety precautions) insufficient to establish the level of control

required to impose liability, those courts have not considered the entirety of the indicia that the instant summary judgment record contains. When viewed as a whole, the summary judgment evidence creates a fact issue on the matter.[6]

### 2. AEPSC

AEPSC argues that because it did not contract with WTS for the specific work on the Bauers' property, it cannot be held liable for WTS's work. The contract with WTS, however, was signed by AEPSC, albeit for the benefit of other corporate entities. AEPSC negotiated and entered into the agreement that grants AEP Texas the authorization and control over WTS's work referenced in the preceding section. This being the case, AEPSC is a party to the contract and holds the same authorizations over WTS's work as does AEP Texas. At the summary judgment stage, AEPSC has not proven that no genuine issue of material fact exists concerning whether it exercised sufficient control over WTF's work so as to be held liable for WTS's conduct.

### E.     Gross Negligence Claim

AEP Texas and AEPSC moved for summary judgment as to gross negligence based solely on the argument that they cannot be held liable for WTS's conduct. The Court has found that a fact issue exists as to whether WTS's actions can be attributed to AEP Texas and AEPSC. As a result, AEP Texas and AEPSC cannot succeed on their respective motion for summary judgment for gross negligence.

## IV.   Conclusion

For the preceding reasons, the Court grants WTS's motion for summary

---

[6] The Bauers also urge the Court to consider tree removal around transmission lines as "inherently dangerous," so as to impose on AEP Texas and AEPSC a non-delegable duty when contracting for such work. The Court finds that Texas courts would not consider tree removal, even when conducted near power lines, as within the "very few activities" that are so inherently dangerous as to impose a non-delegable duty on companies that contract for such services. *See, e.g., Kolius v. Center Point Energy Houston Elec. LLC*, 422 S.W.3d 861, 867 (Tex.App.—Houston [14th Dist.] 2014, no pet.).

judgment, and grants in part and denies in part AEP Texas's and AEPSC's motions for summary judgment. Accordingly, it is:

ORDERED that AEP Texas's Motion for Summary Judgment is GRANTED as to the Bauers' causes of action for breach of contract, breach of warranty, and violations of the Deceptive Trade Practices Act;

ORDERED that AEP Texas's Motion for Summary Judgment is DENIED as to the Bauers' causes of action for negligence and gross negligence;

ORDERED that AEPSC's Motion for Summary Judgment is GRANTED as to the Bauers' causes of action for breach of contract, breach of warranty, and violations of the Deceptive Trade Practices Act;

ORDERED that AEPSC's Motion for Summary Judgment is DENIED as to the Bauers' causes of action for negligence and gross negligence; and

ORDERED that WTS's Motion for Summary Judgment is GRANTED as to the Bauers' causes of action for breach of contract, breach of warranty, and violations of the Deceptive Trade Practices Act.

All other relief not expressly granted is denied.

SIGNED this 26th day of September, 2018.

Fernando Rodriguez, Jr.
United States District Judge